2020 IL App (1st) 190082-U

No. 1-19-0082

Order filed February 13, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| KRZYSZTOF WODZIEN, | ) | Appeal from the Circuit |
| | ) | Court of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | No. 17 M1 013420 |
| v. | ) | |
| | ) | |
| ISAUL CASTILLO, | ) | Honorable |
| | ) | Clare J. Quish, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Justices Reyes and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the circuit court's judgment because the *pro se* appellant's assorted claims of error are either forfeited, meritless, or harmless.

¶ 2    This suit arises from a car accident between plaintiff Krzysztof Wodzien and defendant Isaul Castillo. Following a bench trial at which Wodzien represented himself, the circuit court found Castillo 60% at fault and Wodzien 40% contributorily negligent. After accounting for Wodzien's share of fault, the court awarded him $1,635 in damages plus court costs. Proceeding

*pro se* on appeal, Wodzien raises a host of challenges to the circuit court's judgment. For the reasons that follow, we reject Wodzien's contentions and affirm the circuit court's judgment.[1]

¶ 3                                    I. BACKGROUND

¶ 4    Wodzien and Castillo were involved in a car accident on May 31, 2017, shortly after 9:00 p.m., at the intersection of Foster and Leclaire Avenues in Chicago. Castillo was traveling westward on Foster, while Wodzien was in the eastbound lane of Foster waiting to turn left onto Leclaire. Castillo entered the intersection at the same time Wodzien initiated his left turn and their cars collided.

¶ 5    In a *pro se* complaint filed on July 16, 2017, Wodzien alleged that Castillo entered the intersection on a red light and while speeding. He sought $2,500 in damages. Castillo entered his appearance through counsel and demanded a jury trial. On September 26, 2017, Wodzien filed an amended *pro se* complaint, reasserting the allegations of his initial complaint but increasing the amount of damages sought to $29,130.09, including for medical expenses and lost wages. The same day, the trial court entered an order directing the parties to complete all discovery by January 12, 2018.

¶ 6    On January 5, 2018, Castillo filed a motion to compel Wodzien to answer interrogatories concerning his alleged injuries and medical care, disclose the identity of his treatment providers, and provide unredacted copies of his medical records and bills. On January 19, the court ordered Wodzien to comply with Castillo's requests within 14 days. The court struck the discovery close date of January 12 and set the case for a status hearing on February 8. When Wodzien failed to

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

comply with Castillo's discovery requests by February 8, the court gave him an additional 12 days to do so and reset the status hearing to February 22. At that hearing, Wodzien notified the court that he would not disclose the information that Castillo had requested and, as a result, the court barred him from introducing evidence of any injuries he sustained in the accident and from seeking damages (including lost wages) arising from those injuries.

¶ 7 Meanwhile, Wodzien asked Castillo to produce information about the cellphone that he used on the day of the accident. On February 1, Castillo disclosed that his phone number was 630-696-XXXX[2] and that his account provider was T-Mobile. On February 8, the court granted Wodzien leave to issue a subpoena to T-Mobile for records of Castillo's cellphone activity around the time of the accident. On March 15, Wodzien issued a subpoena to T-Mobile for "[a]ll mobile telephone activity for Mr. Isaul Castillo, tel[ephone] [number] 630-696-[XXXX] (telephone; text messages; internet & media use) for May 31, 2017 [from] 7:30 [p.m.] [until] 11:00 [p.m.]"

¶ 8 On May 17, 2018, the court closed discovery and assigned the case to mandatory arbitration. After a hearing on September 5, 2018, the arbitrators entered an award for Castillo, which Wodzien rejected.

¶ 9 On October 10, 2018, the trial court tendered to the parties the records it received from T-Mobile in response to Wodzien's subpoena. On the same date, Wodzien filed a motion asserting that the T-Mobile records were inconsistent with records that he received from the City of Chicago's Office of Emergency Management and Communications (OEMC). Wodzien attached an email that he received from OEMC in response to a Freedom of Information Act (FOIA)

_____

[2] To protect Castillo's privacy, we have omitted the last four digits of his phone number.

request that he submitted on September 27, 2018. According to the email, Wodzien's FOIA request sought records of any 9-1-1 call that Castillo made on the night of the accident from the location of Foster and Leclaire using the telephone number 630-696-XXXX. The email indicates that OEMC "locate[d] a 9-1-1 call record for the date and location requested" and sent Wodzien a "redacted Event Query [report] for the record found." Wodzien did not attach the event query report to his motion, and the record on appeal does not reveal whether the trial court addressed the motion.

¶ 10    On November 8, 2018, Castillo withdrew his demand for a jury trial and the court set the matter for a bench trial on December 19, 2018. The trial court denied Wodzien's oral request for a jury trial and later denied his written motion to reconsider.

¶ 11    On November 28, 2018, Wodzien filed a motion to release the subpoenaed T-Mobile records that were in the court's possession and requested an opportunity to review the records before trial. Wodzien also asked the court to reschedule the trial date and reopen discovery to allow him to issue an additional subpoena to T-Mobile for records related to a second cellphone that he claimed Castillo used on the day of the accident. Wodzien noticed his motion for a hearing on December 12 at 9:00 a.m. He did not submit any documents in support of the motion at the time he filed it. Instead, on December 12 at 10:51 a.m., Wodzien e-filed copies of a second email and two redacted event query reports that he received from OEMC on October 23, 2018. The email indicates that, after OEMC responded to Wodzien's initial FOIA request, Wodzien requested "an additional record, unrelated to [his] call, pertaining to the incident in question." The email explains that, "[a]fter conducting a search for records using additional criteria, the OEMC was able to locate another call record." The first event query report appears to document

Castillo's call to 9-1-1 from the scene of the accident. The "event details" section of the report lists the caller's name as "Issy Castillo" and contains a redacted phone number. The caller's location is listed as 5099 West Foster Avenue, which is the intersection of Foster and Leclaire. The report's "event chronology" section indicates that the call was received on May 31, 2017, at 9:10:03 p.m., and that the matter was closed on May 31, 2017, at 11:20:53 p.m. The second report lists the caller's name as "Castillo, Isaul" and also contains a redacted phone number. Unlike the first report, however, the second report does not state the time and date that a 9-1-1 call was received. Rather, the second report appears to document Castillo's visit to the police station following the accident. The report's "event details" section lists the "Location of [Service]" (a category not included in the first report) as "016 @ 5151 N MILWAUKEE AV."[3] The "event chronology" section contains five entries, all of which were made on May 31, 2017, at 11:20:03 p.m. The last (and only substantive) entry states: "Advised/'Walk-In' action closed." At the hearing on December 12, the court denied Wodzien's motion to reschedule the trial date and reopen discovery. The court's written order did not address Wodzien's request to release the T-Mobile records received in response to the initial subpoena.

¶ 12    Following the hearing, Wodzien filed a second motion to release the T-Mobile records in the court's possession. Wodzien acknowledged that the court had already tendered T-Mobile documents in open court on October 10, but he argued that those documents were "fragmented" and inconsistent with the OEMC event query reports. The court addressed the motion on the

_____

[3] We take judicial notice that 5151 North Milwaukee Avenue is the site of the Chicago Police Department's 16th District station. See *Aurora Loan Services, LLC v. Kmiecik*, 2013 IL App (1st) 121700, ¶ 37 ("An appellate court may take judicial notice of readily verifiable facts if doing so will aid in the efficient disposition of a case, even if judicial notice was not sought in the trial court.") (internal quotations marks omitted); https://www.chicago.gov/city/en/depts/cpd/dataset/police_stations.html (last visited February 10, 2020).

morning of trial. The court reviewed the documents it received from T-Mobile in response to Wodzien's subpoena and again tendered copies of those documents to the parties. The documents are not part of the record on appeal, but Wodzien has included them in the appendix to his brief. Although "attachments to briefs which are not otherwise of record are not properly before a reviewing court and cannot be used to supplement the record," *Denny v. Haas*, 197 Ill. App. 3d 427, 430 (1990), we note that the records reveal no telephone, texting, or mobile internet activity associated with Castillo's 630-696-XXXX phone number at the time of or immediately preceding the accident.

¶ 13    Also on the morning of trial, the court revisited (and again denied) Wodzien's motion to reopen discovery, concluding that nothing in the OEMC event query reports submitted by Wodzien suggested that Castillo had used two phones on the night of the accident. Among other things, the court noted that the phone numbers listed on the event query reports had been redacted and that the OEMC email accompanying the second report referred to it as "another call record" but did not state that it was associated with a different phone number than the first report.

¶ 14    The court also addressed several motions *in limine* filed by Castillo. As relevant here, the court granted Castillo's motion to exclude evidence related to discovery conducted after the discovery close date. When responding to the motion, Wodzien referred to "[t]he two phone records [that] came out after [the discovery close date]," but he made no offer of proof identifying specific evidence that he wished to present.

¶ 15    At trial, Wodzien testified in narrative form and played a video from his car's dashcam that captured the accident. He testified that he came to a stop at the intersection of Foster and Leclaire while waiting to make a left turn onto Leclaire. According to Wodzien, he began his

turn when the light turned red, at which point Castillo, who was traveling in the opposite direction on Foster, sped through the red light and collided with Wodzien's car in the intersection. Wodzien testified that he noticed Castillo's eyes looking downward prior to the accident and surmised that Castillo had been distracted by his cellphone. Wodzien testified that he and Castillo stayed at the scene of the accident for several hours before going to the police station, during which time he observed Castillo using two cellphones.

¶ 16     Wodzien testified that his car sustained extensive damage in the accident. He introduced an estimate that quoted a repair cost of $10,603. He also testified that, after the accident, he "had to borrow a vehicle from [his] brother" and owed him $1,000. He introduced a written "lease agreement" that he and his brother signed on February 24, 2018, which provided that Wodzien would lease his brother's car for 10 days at a price of $50 per day. The written agreement indicated that it was made to document a "prior verbal agreement" that Wodzien and his brother made on March 31, 2017.[4] Wodzien attempted to testify about medical expenses he incurred following the accident, but the trial court sustained Castillo's objection based on the court's pretrial order barring Wodzien from seeking damages for medical expenses in light of his refusal to disclose information about his injuries and treatment.

¶ 17     After Wodzien rested, Castillo testified that he owned only one cellphone and was not using it at the time of the accident. He also testified that the dashcam video introduced by Wodzien accurately reflected how the accident occurred. On cross-examination, Castillo reiterated that he did not have two cellphones at the time of the accident and testified that the light was yellow when he entered the intersection.

---

[4] On appeal, Wodzien asserts that March 31, 2017 was a typographical error and that he and his brother actually entered the verbal lease agreement on May 31, 2017.

¶ 18    Castillo's counsel then recalled Wodzien to the stand. Wodzien testified that his vehicle was a 2002 Hyundai Elantra that had almost 125,000 miles at the time of the accident. He conceded that, when answering an interrogatory before trial, he valued the vehicle at $2,551. He also agreed that the National Automobile Dealers Association (NADA) guidelines, which Castillo's counsel introduced as an exhibit, provided that a 2002 Hyundai Elantra with 125,000 miles was worth between $675 (in rough condition) and $2,725 (in clean condition). Wodzien disputed, however, that the NADA guidelines reflected the true value of his vehicle in light of various repairs he made prior to the accident.

¶ 19    After hearing closing argument and briefly taking the matter under advisement, the trial court entered judgment for Wodzien. The court first determined that both parties were negligent. Based on the dashcam video, the court found that Castillo entered the intersection, and Wodzien initiated his left turn, while the traffic light was yellow. The court explained that Castillo had a duty to proceed with caution and reduce his speed when entering the intersection on a yellow light, and that Wodzien had a corresponding duty to yield the right of way to an approaching vehicle before making a left turn. The court concluded that Castillo was 60% at fault for the accident and that Wodzien was 40% at fault. With respect to damages, the court found that the fair market value of Wodzien's vehicle before the accident was $2,725. The court held that, under Illinois law, Wodzien could not recover the cost of repairing the vehicle since those costs exceeded the vehicle's fair market value. The court also concluded that Wodzien was not entitled to recover the money that he allegedly owed his brother under their lease agreement. Because the evidence did not establish "when the lease was entered into and the purpose of it," the court found that Wodzien had not satisfied his burden of proving these damages. The court likewise

rejected Wodzien's request for damages relating to car storage fees, plane fare, and various other alleged losses, finding no evidence to support such damages. After reducing Wodzien's damages in proportion to his share of fault, the court awarded him $1,635 plus court costs of $221.86.

¶ 20    On December 24, 2018, Wodzien filed a motion to reconsider the amount of damages, attaching numerous documents that he had not introduced at trial. The court denied the motion on January 10, 2019, and Wodzien filed a notice of appeal the same day. In the ensuing weeks, Wodzien filed several additional post-trial motions. On January 22, 2019, he filed a motion arguing that the trial judge undervalued his vehicle and another motion claiming to have overheard the judge discussing the case with an unidentified person before delivering her judgment. On February 7, 2019, he filed a motion requesting a copy of the judge's notes. Finally, on February 11, 2019, he filed a motion to "punish" Castillo's counsel for allegedly concealing evidence that Castillo used a second cellphone on the day of the accident. In support of this motion, Wodzien filed unredacted copies of the OEMC event query reports. The first report, which documents Castillo's 9-1-1 call following the accident, lists his phone number as 630-696-XXXX. The second report, which appears to document Castillo's subsequent visit to the police station, lists his phone number as 630-676-XXXX.[5] The trial court struck the motions on the ground that it lost jurisdiction after Wodzien filed his notice of appeal.

¶ 21                                    II. ANALYSIS

¶ 22    Before turning to the merits of Wodzien's appeal, we must address the substantial deficiencies in his brief. Litigants, like Wodzien, who proceed *pro se* are not excused from "comply[ing] with the established rules of procedure." *Bielecki v. Painting Plus, Inc.*, 264 Ill.

---

[5] The last four digits in both numbers are the same.

App. 3d 344, 354 (1994). Wodzien's brief violates several Illinois Supreme Court Rules designed to ensure that parties on appeal "present clear and orderly arguments so that the court can properly ascertain and dispose of the issues involved." *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 7.

¶ 23   Rule 341(h)(6), for instance, requires an appellant's brief to include a statement of facts containing "the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. May 25, 2018). Wodzien's one-and-a-quarter-page statement of facts is woefully inadequate. It fails to discuss much of the relevant procedural history of the case or any of the evidence presented at trial, includes not a single citation to the record on appeal, and presents the few facts it does discuss in an argumentative manner.

¶ 24   Wodzien's brief also fails to comply with Illinois Supreme Court Rules 341(h)(3) and 341(h)(7). Rule 341(h)(3) provides that an appellant's brief "must include a concise statement of the applicable standard of review for each issue [presented], with citation to authority." Ill. S. Ct. R. 341(h)(3) (eff. May 25, 2018). Rule 341(h)(7) requires an appellant's brief to include an argument section "which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018). The argument section of Wodzien's brief is divided into three parts, each of which includes an introductory paragraph containing a standard of review with citation to authority. However, the standards of review discussed in those introductory paragraphs bear no relation to the arguments that follow. The remainder of the argument section, moreover, is

convoluted, disjointed, and contains no citations to the record on appeal or to any authorities supporting Wodzien's contentions of error.

¶ 25    In light of these deficiencies, it is within our discretion to strike Wodzien's brief and dismiss his appeal. *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 12. Nevertheless, because Castillo has not asked us to dismiss the appeal, and because we have the benefit of Castillo's cogent brief, we will instead attempt to discern and address Wodzien's arguments. See *Parkway Bank and Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 10; *Rosestone Investments, LLC v. Garner*, 2013 IL App (1st) 123422, ¶ 19.

¶ 26    Wodzien's first contention is that the trial court did not release the records subpoenaed from T-Mobile in sufficient time to allow him to review them before trial. But the record establishes that the court tendered the subpoenaed documents to the parties on October 10, 2018, more than two months prior to trial. In addition, the T-Mobile documents do not show any phone activity by Castillo during or in the moments preceding the accident and thus offer no support for Wodzien's theory that the accident was caused by Castillo's cellphone use. Thus, even if Wodzien had been afforded more time to review the subpoenaed documents before trial, the outcome of the trial would not have been any different. See *Both v. Nelson*, 31 Ill. 2d 511, 514 (1964) ("Where it appears that an error did not affect the outcome below, or where the court can see from the entire record that no injury has been done, the judgment or decree will not be disturbed.").

¶ 27    Wodzien next argues that the trial court erred in granting Castillo's motion *in limine* to exclude evidence that was produced after the close of discovery. Wodzien forfeited any challenge to the court's ruling on the motion *in limine*, however, by failing to make an offer of

proof in the trial court. *Snelson v. Kamm*, 204 Ill. 2d 1, 23 (2003) ("When a motion *in limine* is granted, the key to saving for review an error in the exclusion of evidence is an adequate offer of proof in the trial court."). "An offer of proof informs the trial court, opposing counsel, and the reviewing court of the nature and substance of the evidence sought to be introduced [and] is the key to preserving a trial court's alleged error in excluding evidence." *Colella v. JMS Trucking Company of Illinois*, 403 Ill. App. 3d 82, 93 (2010). At the hearing on Castillo's motion *in limine*, Wodzien made no offer of proof concerning the nature and substance of the evidence produced after the close of discovery that he sought to introduce at trial. Instead, Wodzien simply referred to "[t]he two phone records [that] came out after [the discovery close date]." But he did not state with specificity whether he sought to introduce the phone records that he subpoenaed from T-Mobile or the redacted OEMC event query reports that he received in response to his FOIA requests.[6] Wodzien's unelaborated reference to "[t]he two phone records" lacked the "particularity" required to constitute "an adequate offer of proof." *Snelson*, 204 Ill. 2d at 23. He has thus forfeited his challenge to the trial court's order granting the motion *in limine*.

¶ 28    Even if we were to overlook Wodzien's forfeiture, we find no reversible error in the trial court's order. A trial court has "broad powers to supervise the discovery process," *Atwood v. Warner Electric Brake and Clutch Company, Inc.*, 239 Ill. App. 3d 81, 88 (1992), and is also

---

[6] Indeed, it is unclear whether the trial court's order encompassed the T-Mobile records. Although T-Mobile apparently sent the documents to the court after discovery had closed, Wodzien subpoenaed the documents while discovery was open. In addition, when the trial court reviewed and tendered the T-Mobile documents to the parties on the morning of trial, Castillo's counsel indicated that he had no objection to Wodzien "refer[ring] to these records," which is unsurprising given that they do not show any cellphone use by Castillo prior to or during the accident. On appeal, however, Castillo's counsel interprets the court's order as having excluded the cellphone records. An adequate offer of proof by Wodzien would have eliminated this uncertainty.

"vested with broad discretion to grant a motion *in limine* as part of its inherent power to admit or exclude evidence." (Internal quotation marks omitted.) *Jacobs v. Yellow Cab Affiliation, Inc.*, 2017 IL App (1st) 151107, ¶ 35. A trial court "abuses its discretion when its decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would agree with its position." *King Koil Licensing Co. v. Harris*, 2017 IL App (1st) 161019, ¶ 70. In addition, even when a trial court abuses its discretion in excluding evidence, a new trial is warranted only if the "erroneous evidentiary ruling was substantially prejudicial and affected the outcome of the trial." *DiCosolo v. Janssen Pharmaceuticals, Inc*, 2011 IL App (1st) 093562, ¶ 40. To the extent that the trial court barred Wodzien from introducing the subpoenaed T-Mobile records, the exclusion was plainly harmless, as the records show no cellphone activity by Castillo preceding or during the accident and thus provide no support for Wodzien's contention that the accident was caused by Castillo using his cellphone while driving.

¶ 29    With respect to the OEMC event query reports, we find no abuse of discretion in the trial court's order excluding them. After Wodzien filed his amended complaint in September 2017, the trial court set an initial discovery close date of January 12, 2018. The court later extended that deadline by four months before closing discovery on May 17, 2018. Yet Wodzien did not submit his initial FOIA request to OEMC until September 27, 2018. Because Wodzien offered no explanation for his failure to request the OEMC event query reports during the eight-month discovery window, we cannot say that the trial court abused its discretion in barring him from introducing the reports at trial. In addition, any error in excluding the reports was harmless. Wodzien contends that the reports support his theory that Castillo used two cellphones on the night of the accident. But at the time of trial, the only documents that Wodzien had obtained (and

could have presented) contained redacted phone numbers. And contrary to Wodzien's supposition, there is no indication that the reports document separate phone calls by Castillo on the night of the accident. While the first report chronicles Castillo's 9-1-1 call from the scene of the accident, the second report appears to document his subsequent visit to the police station. Moreover, even if we were to assume that Castillo made calls to 9-1-1 from different phone numbers on the night of the accident, nothing in the event query reports supports the theory that Castillo was using a cellphone at the time of the accident. Thus, even if the trial court erred in excluding the event query reports, its ruling did not "substantially prejudic[e]" Wodzien's case or "affect[ ] the outcome of the trial." *DiCosolo*, 2011 IL App (1st) 093562, ¶ 40.

¶ 30    Wodzien's next challenge is to the trial court's denial of his motion to reopen discovery to allow him to issue a second subpoena to T-Mobile for records related to the second phone that he alleges Castillo used on the night of the accident. "The decision as to whether to reopen discovery rests in the sound discretion of the [trial] court and this court will not disturb such rulings on appeal absent a showing of abuse of discretion." *Ruane v. Amore*, 287 Ill. App. 3d 465, 471 (1997). We find no abuse of discretion. As explained above, the trial court closed discovery on May 17, 2018, after extending the prior deadline by four months. Wodzien did not file his motion to reopen discovery until November 28, 2018. By then, the case had already proceeded through arbitration and was set for a bench trial on December 19, 2018. Wodzien offered no explanation for his failure to have subpoenaed additional T-Mobile records earlier. Nor did he give the trial court any reason to believe that an additional subpoena to T-Mobile would produce relevant evidence. As the trial court explained, the OEMC emails and redacted event query reports that Wodzien submitted in support of his motion to reopen discovery

provided no basis for concluding that Castillo used an additional cellphone on the night of the accident. The OEMC email merely indicated that the agency had located "another call record," but it did not suggest that the call record was associated with a different phone number than the first record. Moreover, as explained above, the second event query report does not appear to document a phone call at all, but rather a visit to the police station. There is no reason to believe that a second subpoena to T-Mobile would have revealed that Castillo possessed a second cellphone on the night of the accident, much less that he was actively using that phone at the time of the accident. Because Wodzien did not diligently attempt to issue a second T-Mobile subpoena and because his request to belatedly do so was based on unsupported conjecture, we cannot say that the trial court abused its discretion in denying his eleventh hour request to reopen discovery.

¶ 31 Wodzien also contends that the trial court erred in barring him from presenting evidence of injuries he sustained in the accident and for capping his recovering for property damage at the fair market value of his vehicle rather than the greater cost he would incur to repair it. Neither ruling was error. The trial court did not abuse its discretion in prohibiting Wodzien from introducing evidence of his injuries after he willfully refused to produce any discovery concerning those injuries or his medical care. See *Polk v. Cao*, 279 Ill. App. 3d 101, 105-107 (1996) (holding that trial court did not abuse its discretion in barring plaintiff's claim for lost wages after plaintiff refused to produce his tax returns). Nor did the court err in limiting Wodzien's damages to the fair market value of his vehicle. "The cost of repairs to personal property is usually the measure of damages, but when the cost of repairs exceeds the fair market value of the personal property, the value of the personal property becomes the ceiling on the

amount of damages which can be recovered." *Leith v. Frost*, 387 Ill. App. 3d 430, 436 (2008). In other words, "when personal property is destroyed or rendered useless, the ordinary measure of damages for the property is the fair market value at the time of the loss." *Benford v. Everett Commons, LLC*, 2014 IL App (1st) 130314, ¶ 30. The trial court thus properly assessed Wodzien's damages based on the fair market value of his vehicle rather than what it would have cost him to repair it. Moreover, to the extent that Wodzien challenges the trial court's calculation of his vehicle's fair market value, we find that the court's determination was amply supported by the evidence. See *ICD Publications, Inc. v. Gittlitz*, 2014 IL App (1st) 133277, ¶ 57 ("[W]e will not overturn a trial court's determination regarding damages as contrary to the manifest weight of the evidence if there is evidence in the record to support the judgment amount.") (internal quotation marks omitted).

¶ 32    Wodzien next argues that the trial court erred in denying his request for a jury trial. But Wodzien waived his right to a jury trial when he failed to make a jury demand at the time he filed his complaint. See 735 ILCS 5/2-1105(a) (West 2018). A trial court has discretion to grant a late request for a jury trial upon a showing of good cause and a lack of prejudice or inconvenience, see *Hernandez v. Power Construction Co.*, 73 Ill. 2d 90, 95-98 (1978); *Koehler v. Packer Group, Inc.*, 2016 IL App (1st) 142767, ¶ 36, but it is impossible for us to say that the trial court abused its discretion because the record on appeal does not include a transcript of the pretrial hearings at which the court addressed and denied Wodzien's oral request for a jury trial and his subsequent written motion to reconsider. See *Illinois Founders Insurance Co. v. Williams*, 2015 IL App (1st) 122481, ¶ 56 (where appellate court "cannot divine the trial court's reasoning in denying [a] motion," it "cannot determine whether that decision constituted an

abuse of discretion"). As appellant, it was Wodzien's "burden to present a sufficiently complete record of the proceedings *** to support a claim of error." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984). We must therefore resolve "[a]ny doubts which may arise from the incompleteness of the record" against Wodzien and "presume[ ] that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Id.* at 392.

¶ 33    Finally, Wodzien contends that the trial judge was biased against him. "A trial judge is presumed to be impartial, and the burden of overcoming this presumption rests on the party making the charge of prejudice." *Eychaner v. Gross*, 202 Ill. 2d 228, 280 (2002). "A judge's rulings alone almost never constitute a valid basis for a claim of judicial bias or partiality." *Id.* "Rather, the party making the charge of prejudice must present evidence of prejudicial trial conduct and evidence of the judge's personal bias," which generally must "stem from an extrajudicial source." *Id.* Wodzien offers no evidence of prejudicial trial conduct or personal bias by the judge stemming from any extrajudicial source. He contends that he overheard the judge discussing the case with an unidentified person before she delivered her judgment, but he provides no evidence that the conversation took place, much less that the person was assisting the judge in deciding the case, as Wodzien speculates. He also contends that the trial judge displayed bias against him by discounting the lease agreement he signed with his brother due to a typographical error while failing to correct a typographical error on the court docket (a misspelling of Castillo's name) and allowing Castillo's counsel to file a motion (which Wodzien's brief does not identify) that similarly contained a typographical error. But these actions, even if true, fall far short of "display[ing] such deep-seated favoritism or antagonism that would make fair judgment impossible." *Eychaner*, 202 Ill. 2d at 281. Finally, Wodzien

contends that he was ill during the trial and that the judge failed to treat him with compassion. But at no point during the trial did Wodzien indicate that he was ill. And the trial transcript reveals that the judge was commendably patient with Wodzien throughout the trial. There is no evidence in the record even remotely demonstrating judicial bias.

¶ 34                                    III. CONCLUSION

¶ 35    For the foregoing reasons, we affirm the circuit court's judgment.

¶ 36    Affirmed.